UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

KIMARLEY HAYE,                                              COMPLAINT AND
                                    PLAINTIFF               JURY DEMAND
              -against-

THE CITY OF NEW YORK, POLICE OFFICER NICO          Docket #
HEWITT,   POLICE   OFFICER   DUQUAI   PIERRE,
POLICE   OFFICER   ANTHONY   SICA,   POLICE
SERGEANT SEKAYI BABB, JOHN DOE #1-6,
                                    DEFENDANTS

---------------------------------------------------------------------- x


Plaintiff Kimarley Haye, by his attorneys, Stoll, Glickman & Bellina, LLP, for his complaint
allege as follows:

PRELIMINARY STATEMENT

1.      This is a civil rights action in which plaintiff seeks relief through 42 U.S.C. §1983 for

the violation of his First, Fourth and Fourteenth Amendment rights.

2.      The claim arises from an April 21, 2015 incident in which Officers of the New York

City Police Department ("NYPD"), acting under color of state law, intentionally and willfully

subjected plaintiff to false arrest and malicious prosecution.

3.      Plaintiff seeks monetary damages (special, compensatory, and punitive) against

defendants, as well as an award of costs and attorneys' fees, and such other and further relief as

the Court deems just and proper.

JURISDICTION

4.      This action arises under the Fourth and Fourteenth Amendments to the United States

Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of

New York.

5.      The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4),

1367(a) and the doctrine of pendent jurisdiction.

## VENUE

6.     Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

## NOTICE OF CLAIM

7.      Within 90 days of the events giving rise to this claim, plaintiff filed written notice of claim with the New York City Office of the Comptroller.  Over 30 days have elapsed since the filing of that notice, and this matter has not been settled or otherwise disposed of.

## PARTIES

8.     Plaintiff Kimarley Haye is a resident of Kings County in New York State.

9.     The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York.  At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

10.    Police Officers Nico Hewitt, Duquai Pierre, Anthony Sica, and Sergeant Sekayi Babb, were at all times here relevant police officers of the NYPD, and as such were acting in the capacity of an agent, servant and employee of the City of New York.  On information and belief, defendants Hewitt, Pierre, Sica, and Babb were involved in the illegal arrest of plaintiff and/or

failed to intervene in the actions of their fellow officers.  Defendants Hewitt, Pierre, Sica, and Babb are sued in their individual capacities.

11.   All other individual defendants ("the officers"), including John Doe #1-6, individuals whose names are currently unknown to plaintiff, are employees of the NYPD, and are sued in their individual capacities.

12.   At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

<u>FACTUAL ALLEGATIONS</u>

13.   On April 21, 2015, plaintiff Kimarley Haye entered the NYPD's 69th precinct in Brooklyn New York.

14.   Plaintiff went to the 69th precinct on the above date to report that he believed himself to be the victim of identity theft.

15.   Plaintiff was instructed to wait to speak with defendant Hewitt.

16.   After waiting for an extended period of time, Plaintiff asked defendant Pierre whether another officer could help him.

17.   Defendant Pierre responded to plaintiff's request angrily and discourteously, and refused to help plaintiff.

18.   Plaintiff decided to report the discourtesy of Officer Pierre to the Civilian Complaint Review Board ("CCRB").

19.   The CCRB is a civilian organization maintained by the City which is "empowered to receive, investigate, mediate, hear, make findings, and recommend action on complaints against New York City police officers alleging the use of excessive or unnecessary force, abuse of

authority, discourtesy, or the use of offensive language."[1]

20.  Plaintiff called CCRB on his cell phone and began making a report.

21.  The CCRB representative asked plaintiff for the badge number of defendant Pierre, which he provided.

22.  Upon information and belief, defendant Pierre overheard plaintiff reporting Pierre's badge number to the CCRB.

23.  Defendant Pierre directed plaintiff to leave the precinct, and physically escorted him out of the building.

24.  Plaintiff complied with the order to leave the precinct, but also requested to speak with defendant Pierre's supervisor.

25.  Defendant Pierre responded by telling plaintiff to wait outside the precinct for a supervisor.

26.  Plaintiff again tried to report the actions of the officers to the CCRB, but was told he could not report the incident while it was ongoing.

27.  While plaintiff was waiting outside the precinct as instructed, a group of officers approached plaintiff and directed him to leave the area.

28.  Plaintiff attempted to comply with the direction to leave.

29.  As plaintiff was leaving the area, defendant Sica approached him and placed him into custody.

30.  Upon information and belief, defendant Babb was present when plaintiff was directed to leave the area, observed him trying to comply with the order, and was present when defendant Sica arrested him.

---

[1] See the "About CCRB" page of the City's website available at http://www.nyc.gov/html/ccrb/html/about/about.shtml, last accessed on February 25, 2016.

31.   Defendants took plaintiff back into the precinct and placed him in a holding cell.

32.   Plaintiff was processed for arrest.

33.   After several hours in the precinct, plaintiff was issued a summons ticket for disorderly conduct and released.

34.   At no time was plaintiff acting in a disorderly manner, nor was it reasonable for defendants to believe he was doing so.

35.   The ticket issued to plaintiff was later dismissed.

36.   Upon information and belief, defendants Hewitt, Pierre, Sica, and Babb were present for and actively participated in the arrest of plaintiff, and/or provided knowingly false information for the purpose of having plaintiff arrested and/or failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

37.   Defendants lacked probable cause or reasonable suspicion to believe plaintiff had been involved in any illegal activity.

38.   At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights.  The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events.

39.   During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

<u>DAMAGES</u>

40.   As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

a.       Violation of his rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution;

b.       Violation of his rights to Due Process of Law under the Fourteenth Amendments to the United Stated Constitution;

c.       Loss of liberty;

d.       Emotional suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety.

## FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983 – as to Individual Defendants)

41.     The above paragraphs are here incorporated by reference.

42.      Defendants have deprived plaintiff of his civil, constitutional and statutory rights under color of law and have conspired to deprive him of such rights and are liable to plaintiff under 42 USC § 1983.

43.     Defendants' conduct deprived plaintiff of his right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution.  Defendants' conduct also deprived plaintiff of his right to due process of law, pursuant to the Fourteenth Amendment to the United States Constitution.

44.     Defendants falsely arrested plaintiff, maliciously prosecuted him, and failed to intervene in each other's obviously illegal actions.

45.     Plaintiff has been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983 – Municipal And Supervisory Liability as to Defendant City of New York)

46.     The above paragraphs are here incorporated by reference

47.     The City is liable for the damages suffered by Plaintiffs as a result of the conduct of

their employees, agents, and servants, in that:  after learning of their employees' violation of Plaintiffs' constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue; and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.  The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of Plaintiffs' constitutional rights in this case.

48.    The City's continuing failure to deter police misconduct has led to an increase in the number of lawsuits for repeat routine misconduct by the same officers, same units, and same precincts.

49.    The number of claims against the NYPD doubled between 2004 and 2014, to a record high of 9,570 lawsuits filed in 2012.  The suits cost taxpayers more than $1 billion dollars during that time period.[2]

50.    From 2009-2014, New York City paid out more nearly $500 million to settle NYPD-related cases.[3]  In fiscal year 2012, so-called "police action claims," which are claims that result from false arrest or imprisonment, police shootings, excessive use of force, assault, or failure to

---

[2] Barry Paddock, Rocco Parascandola, John Marzulli, & Dareh Gregorian, *Exclusive: Detective is NYPD's most-sued cop, with 28 lawsuits filed against him since 2006*, N.Y. DAILY NEWS, Feb. 16, 2014, http://www.nydailynews.com/new-york/lawsuits-nypd-double-decade-costing-taxpayers-1b-article-1.1615919#ixzz2ttdX4ZkE; *see also* Colleen Long & Jennifer Peltz, Associated Press, *Nearly $1B in NYC police payouts*, Yahoo! News (October 14, 2010, 7:44 PM), http://news.yahoo.com/ap-investigation-nearly-1b-nyc-police-payouts.html (reporting that, in the decade ending in 2010, the City paid out nearly one billion dollars to resolve claims against the NYPD).

[3] Caroline Bankoff, *The City Has Paid Almost Half a Billion Dollars in NYPD-Related Settlements Over the Past 5 Years*, NYMag.com, Oct. 12, 2014, http://nymag.com/daily/intelligencer/2014/10/428-million-in-nypd-related-settlements-paid.html.

protect, cost the City $64.4 million.[4]  In fiscal year 2011, the City paid $60.2 million in police action claims.[5]

51.    The widely held assumption is that civil rights lawsuits deter police misconduct.  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161, (1992) (citing *Carey v. Piphus,* 435 U.S. 247, 254-257, (1978)).  "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts."  *Hudson v. Michigan*, 547 U.S. 586, 598 (2006) (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001) and *Nix v. Williams,* 467 U.S. 431, 446, (1984)).

52.    However, the City of New York has isolated NYPD officers from accountability for civil rights lawsuits by routinely indemnifying officers who violate the constitutional rights of citizens against all liability.  The result is that civil rights lawsuits have no deterrent value to the City, the NYPD, or NYPD officers.  "It is almost axiomatic that the threat of damages has a deterrent effect, surely particularly so when the individual official faces personal financial liability." *Carlson v. Green*, 446 U.S. 14, 21, (1980) (citing *Imbler v. Pachtman*, 424 U.S. 409, 442 (1976)) [footnote omitted].

53.    Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even when the same officers are named in numerous lawsuits.  In 1999, then-Comptroller Alan Hevesi reported that there was a "total disconnect" between the settlements of even substantial civil claims and

---

[4] City of New York, Office of the Comptroller Claims Report FY 2012, 30, June 4, 2013, https://www.documentcloud.org/documents/1375759-fy-2012-claims-report.html.

[5] *Id.*

NYPD action against officers. That total disconnect has remained fully in place since 1999. The result is a system in which the City pays vast sums of money to settle claims of constitutional violations, but the NYPD does nothing to investigate or address the underlying causes of such violations.

54.    Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated the Law Department from the discipline of police officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the officers' lawsuit liability, even after multiple lawsuits.

55.    At a City Council hearing on December 12, 2009, and on other occasions, the City Council, Government Operations Committee has been alerted to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability. Nonetheless, the City Council has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units, and precincts are disproportionately responsible for New York City civil rights lawsuits.

56.    The event underlying Plaintiffs' factual allegations was not an isolated incident. The City has been aware for some time, from lawsuits, Notices of Claim, complaints filed with the Civilian Complaint Review Board ("CCRB"), City Council hearings, newspaper reports, cases resulting in declined prosecutions and dismissals, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of NYPD officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

57. Moreover, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD. The City's deliberate indifference towards the contents of civil rights litigation, individual officers repeatedly named in lawsuits, incidents repeatedly occurring in the same precinct, and patterns of misconduct that arise in civil rights litigation has caused the constitutional violations against Plaintiffs.

58. The City has purported to attempt to address police officers' abuse of authority, in part through the creation of the CCRB. However, the CCRB has proved vastly inadequate for that purpose.

59. The CCRB, a City police oversight agency, often finds complainants lack credibility based in part on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to the CCRB. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD upon finding misconduct by an officer.

60. The NYPD, once receiving a substantiated complaint by the CCRB, routinely fails to adequately discipline officers for misconduct. Even as focus on police misconduct has increased in recent years, and new leadership has promised sweeping operational changes, the NYPD still routinely fails to discipline its officers. According to a study conducted by the WNYC, in 2012, police officers received no discipline in 104 cases (40.3%) of the substantiated

complaints processed (258).[6]  In 2013, the NYPD dropped 28.3% of the substantiated complaints without any disciplinary action.[7]  In 2014, it dropped 24.5%.[8]

61.    Due to the continuing failures of the CCRB, many abuses of authority by police officers go unreported.  Even when abuse is reported, police officers rarely, if ever, are disciplined.  This pattern is well-known to NYPD officers; as a result, officers feel free to abuse their authority with little or no fear of repercussions.  Such lack of accountability has permitted, and even encouraged, frequent and widespread violations of the civil rights of individuals at the hands of NYPD officers.  Furthermore, the lack of accountability contributed to the defendant police officers' actions described above in that the officer defendants felt insulated from any repercussions for their actions regarding the Plaintiff.

62.    The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized.  Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which the police commissioner has done on many occasions.  This entire procedure provide so many opportunities for meritorious complaints of false arrests to be dismissed or disregarded that there is no credible, effective oversight of police department employees, despite an apparently elaborate set of oversight mechanisms.

63.    The City has also been alerted to the regular use of stop and frisks by its police officers, which disproportionately target people of color, despite the of lack criminal evidence that such

---

[6] WNYC, *Police Punishment: CCRB vs NYPD*, http://project.wnyc.org/ccrb/ (last visited July 23, 2015).

[7] *Id.*

[8] *Id.*

stop and frisks actually produce, and despite the humiliation, inconvenience, and constitutional violations that the majority of law-abiding people, mostly in communities of color, suffer as a result.

64.     Even as the use of stop and frisk has declined precipitously in recent years – in large part due to the federal class action lawsuit *Floyd, et al. v. City of New York, et al.*, 08-CV-1034 (SAS) – the police have continued to use the policing tactic in a severely racially disproportionate manner, and for the improper purpose of meeting "performance goals" (arrest quotas).  According to data collected by the New York Civil Liberties Union ("NYCLU"), in 2014, New Yorkers were stopped by the police 46,235 times.  Of the people stopped:  38,051 were totally innocent of any crime (82%); 24,777 were Black (55%); 12,662 were Latino (29%); and 5,536 were white (12%).[9]

65.     The City is also aware that the misconduct does not stop at the regular use of stop and frisks to violate the civil rights of innocent people.  For example, the NYCLU reported that more than 85% of summonses for Open Container were given to Black and Latino New Yorkers, whereas white recipients made up merely 4%.[10]  The grossly disproportionate issuance of summonses to New Yorkers of color led one Kings County judge to note that he could not recall ever having arraigned a white defendant on an open container charge.[11]  Police officers have repeatedly told New York City news investigations that their supervisors pressure them into reaching "performance goals" or arrest quotas, resulting in the violation of innocent New

---

[9] *See* NYCLU, *Stop and Frisk Campaign: About the Issue*, http://www.nyclu.org/content/stop-and-frisk-data (last visited July 22, 2015).

[10] See NYCLU, *Testimony Before City Council Public Safety & Courts and Legal Services Committees On Summons Court Operations and Impact*, http://www.nyclu.org/content/testimony-city-council-public-safety-courts-and-legal-services-committees-summons-court-oper.

[11] *People v. Figueroa*, 36 Misc.3d 605, 608 (Kings Co. 2012).

Yorker's civil rights.[12]

66.   The City's inability to prevent its officers from abusing the stop and frisk policy are emblematic of the City's continuing failures to exercise adequate control over the NYPD, and to prevent police officers from abusing their authority.  Such failures have led to further abuse of authority by police officers, including the incident underlying Plaintiff's Complaint.

67.   Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct.  Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for.  Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

68.   All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal.  As the Honorable Jack Weinstein, United States District Court Judge of the Eastern District of New York, has written:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration—through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department—

---

[12] *See* Jim Hoffer, *NYPD Officer Claims Pressure to Make Arrests*, WABC News ( (Mar. 2, 2010, 10:37 PM), http://7online.com/archive/7305356/ and Jim Hoffer, *Kelly Responds to Our NYPD Quotas,* WABC News (May 25, 2010, 3:31 PM), http://7online.com/archive/7461355/.

> there is some evidence of an attitude among officers that is
> sufficiently widespread to constitute a custom or policy by the city
> approving illegal conduct of the kind now charged.

*Colon v. City of New York*, No. 09-CV-8, 2009 WL 4263362, at *2 (E.D.N.Y. Nov. 25, 2009).

69.    The City is aware that all of the aforementioned has resulted in violations of citizens'

constitutional rights.   Despite such notice, the City has failed to take corrective action.   This

failure and these policies caused the officers in the present case to violate Plaintiffs' civil rights,

without fear of reprisal.

70.    Plaintiffs have been damaged as a result of the deliberate indifference of the Defendant

City.

## THIRD CAUSE OF ACTION
(FALSE ARREST AND ILLEGAL IMPRISONMENT)

71.    The above paragraphs are here incorporated by reference.

72.    Defendants subjected plaintiff to false arrest, false imprisonment, and deprivation of

liberty without probable cause.

73.    Defendants intended to confine plaintiff.

74.    Plaintiff was conscious of the confinement and did not consent to it.

75.    The confinement of plaintiff was not privileged.

76.    As a result of the false arrest, imprisonment, and deprivation of liberty, plaintiff was

damaged.

## FOURTH CAUSE OF ACTION
(MALICIOUS PROSECUTION)

77.    The above paragraphs are here incorporated by reference.

78.    Defendants, acting with malice, initiated a prosecution against plaintiff and caused him

to be prosecuted.

79.   Defendants did not have probable cause to initiate this proceeding.

80.   The criminal proceedings were terminated in plaintiffs' favor.

81.   Defendants have deprived plaintiff of his civil, constitutional and statutory rights and have conspired to deprive him of such rights and are liable to plaintiffs under New York State common law, and the New York State Constitution.

82.   As a result of the malicious prosecution implemented by defendants, plaintiff was damaged.

## FIFTH CAUSE OF ACTION
(RESPONDEAT SUPERIOR)

83.   The above paragraphs are here incorporated by reference.

84.   Defendants' intentional tortious acts were undertaken within the scope of their employment by defendant City of New York and in furtherance of the defendant City of New York's interest.

85.   As a result of defendants' tortious conduct in the course of their employment and in furtherance of the business of defendant City of New York, Plaintiff was damaged.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A.   In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B.   Awarding plaintiff punitive damages in an amount to be determined by a jury;

C.   Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D.   Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


DATED:      February 26, 2016                   Respectfully yours,
            Brooklyn, New York

                                                By: Nicholas Mindicino, Esq.
                                                Stoll, Glickman & Bellina, LLP
                                                Attorneys for Plaintiff
TO:     City of New York                        475 Atlantic Avenue, 3rd Floor
        Corporation Counsel Office              Brooklyn, NY  11217
        100 Church Street                       (718) 852-3710
        New York, NY  10007                     (718) 852-3586
                                                NMindicino@stollglickman.com
        Officer Nico Hewitt

        Duquai Pierre

        Anthony Sica

        Sergeant Sekayi Babb